UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE: )
)
CHIEFTAIN STEEL, LLC and ) CASE NO. 16-10407(1)(11)
FLOYD INDUSTRIES, LLC )
)
Debtor(s) )

## MEMORANDUM-OPINION

This matter is before the Court on the Joint Motion of Dinsmore & Shohl LLP ("Dinsmore"), Bingham Greenebaum Doll LLP ("BGD"), Fox Rothschild LLP ("Fox"), and Phoenix Management Services, LLC ("Phoenix"), and together with Dinsmore, BGD and Fox ("the Professionals") to Compel Turnover and Payment of Carve-Out held by United Cumberland Bank ("UCB") and the Supplemental Filing of the Professionals in Support of its Motion to Compel Turnover and Payment of Carve-Out held by UCB. The Court considered the Motion of the Professionals, the Response of UCB, the Reply of the Professionals, and the Response of UCB to the Professionals' Supplemental Filing, and the comments of counsel for the parties at the hearing held on the matter. For the following reasons, the Court will **DENY** the Professionals' Motion. An Order incorporating the findings herein accompanies this Memorandum-Opinion.

## INTRODUCTION AND BACKGROUND FACTS

On May 2, 2016, Chieftain Steel, LLC filed its Voluntary Petition seeking relief under Chapter 11 of the United States Bankruptcy Code.

On May 20, 2016, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

On June 24, 2016, the Court entered Orders authorizing the Committee to retain BGD and Fox as the Committee's counsel.

On July 20, 2016, the Court entered an Order authorizing the Committee to retain Phoenix as the Committee's financial advisor.

On August 22, 2016, the Court entered an Order authorizing Chieftain Steel, LLC to retain Dinsmore as its counsel.

On September 9, 2016, Floyd Industries, LLC filed its Voluntary Petition seeking relief under Chapter 11 of the United States Bankruptcy Code. Floyd Industries' bankruptcy case was jointly administered with Chieftain Steel's bankruptcy case.

Following entry of a First Interim Cash Collateral Order on July 8, 2016, the Court entered a Second Interim Cash Collateral Order which provided for a Carve- Out for the payment of $20,000 per month for Dinsmore and $20,000 per month for the other Professionals. The terms of the Cash Collateral Order clearly stated that the Carve-Out was to be paid by the Debtor before payment of any indebtedness for UCB, subject to the limits as set forth therein. That provision stated as follows:

> Payment of any amounts on account of the Post-Petition Replacement Liens, the United Cumberland Pre-Petition Indebtedness, and United Cumberland Pre-Petition Liens, shall be subject and subordinate to payment of the Carve-Out. For purposes of this Agreed Order, the Carve-Out shall mean (i) any, fees, costs, disbursements, charges and expenses (as allowed by the Bankruptcy Court) of attorneys, accountants and other professionals of (x) the Debtor retained in the Chapter11 case pursuant to Sections 327, 328, 330, 331 and 1103 of the Bankruptcy Code and (y) the Committee; provided, however that the aggregate amount of the Debtor's fees, costs, disbursements, charges and expenses entitled to priority as part of the Carve-Out under clause (i) above shall not exceed $20,000 per month and the Committee's fees, costs, disbursements, charges and expenses entitled to priority as part of the Carve-Out under clause (i) above shall not exceed $20,000 per month. **The Debtor shall pay the Carve-Out as funds permit without causing an overdraft.**

(Second Interim Cash Collateral Order § 9(a)) (emphasis added).

Following entry of this Order, twelve subsequent Cash Collateral Orders were entered in the bankruptcy cases which also provided for the Carve-Out.  *See* Dk. Nos. 111, 113, 129, 139, 147, 175, 177, 197, 198, 219, 245 and 246.  Each Cash Collateral Order was negotiated and agreed to by UCB.  Each of the Cash Collateral Orders made all of UCB's liens and claims subject to the Carve-Out.  However, each Cash Collateral Order stated that the Debtor was required to pay the Carve-Out "as funds permit without causing an overdraft."  See each of the above referenced Cash Collateral Orders at ¶ 9(a).  There was no provision shifting the Debtor's responsibility to make the payment of the Carve-Out to UCB.

On April 18, 2017, the Debtors filed their Second Amended Joint Plan of Reorganization.  The Amended Plan states that Professionals' fees would be paid as follows:

> [H]olders of Professional Fee Claims shall receive Cash in an amount equal to the allowed amount of their respective Bankruptcy Court–approved Professional Fee claims . . . Any award by the Bankruptcy Court shall be paid in full in such amounts as are Allowed by an Order of the Bankruptcy Court, *first*, from any Carve-Out amounts held in escrow by an Entity asserting such Professional Fee Claim and, *second*, if Carve-Out amounts held by the Entity are exhausted, the Professional Fee Claim shall be payable as soon as practicable, and in any event within forty-five (45) days' of entry of an order approving the Professional Fee Claim.  With respect to Professional Fee Claims arising after the Effective Date, the Reorganized Debtor shall pay such Professional Fee Claim in the ordinary course of business without the necessity of any Professionals being required to file an application for such Professional Fee Claims.

Amended Plan, § 3.05.  As with the Cash Collateral Orders, nothing in the Amended Plan shifted the responsibility for payment of the Carve-Out from the Debtors to UCB.

The treatment of UCB's secured claim was set forth in the Second Amended Plan at paragraph 4.02.  It states, in pertinent part:

> UCB shall have an Allowed Claim in an amount not less than $3,692,178.70.  The Class I Secured Claim shall be satisfied via the Reorganized Debtors continuing payment of the Debtors' pre-petition date obligations to UCB.  UCB's existing liens,

      mortgages and guaranties shall be deemed to be in full force and effect to secure to Reorganized Debtors' obligations to UCB; . . .

This provision was not made subject to any continued claims for attorneys fees or to a Carve-Out for pre-confirmation attorneys' fees.

    As of the Effective Date of the Plan, all assets of each Debtor vested and remained with the Reorganized Debtors free and clear of liens and encumbrances except for those provided for in the Plan. *See*, paragraph 7.05.

    On May 24, 2017, the Court entered an Order of Confirmation on the Second Amended Plan. *See* DK No. 266.

    On August 9 and 10, 2017, the Court entered Orders granting pending Fee Applications of the Professionals in the following amounts:

    1. BGD – fees $126,247.88 and expenses $603.74;

    2. Fox – fees $25,612.38 and expenses $535.69;

    3. Phoenix – fees $41,658.69 and expenses $32.10;

    4. Dinsmore – fees $296,476 and expenses $5,178.15.

Following entry of these Orders, the reorganized Debtors made partial payments to the Professionals but the Professionals claim they are still owed the following amounts from the Carve-Out:

    1. BGD – $83,728;

    2. Fox and Phoenix – fees $37,962.48 collectively;

    3. Dinsmore – $180,646.47, $105,717 of which it claims should be paid by UCB under the terms of the Carve-Out.

The Reorganized Debtor known as the Pennyrile Company, LLC, ("Pennyrile") under the terms of the Amended Plan, was unable to pay its debts as they became due and on January 23, 2018 an Involuntary Chapter 7 Petition was filed against Pennyrile, Case No. 18-10046. Given the demise of Pennyrile, now the Professionals seek payment of these fees directly from UCB.

UCB contends it is not responsible to pay the Professionals directly, as there is nothing in the Cash Collateral Orders or the Confirmation Order wherein it agreed for the Professionals to recover their unpaid fees directly from UCB. Instead, UCB contends the Orders provide only for Debtor's interim payments prior to confirmation of the Plan and do not make UCB the guarantor of the Debtor's legal fees post-confirmation. Furthermore, UCB contends the Professionals' fees are barred by *res judicata* because there was no objection to the entry of the Plan Confirmation Order.

## **LEGAL ANALYSIS**

The issue before the Court is whether UCB can be forced to pay the allowed fees of the Professionals pursuant to the terms of the Carve-Out contained in the Interim Cash Collateral Orders and the Amended Plan of Reorganization.

The Debtors, the primary obligor of all administrative fees, made payments to the Professionals under the Cash Collateral Orders, but those payments were approximately half of what was allotted by the terms of the Carve-Out. As the Debtors became strapped for cash, the payments became less frequent. The Cash Collateral Orders provided for an escrow of funds, but that procedure was ended once the Amended Plan of Reorganization was confirmed. Pennyrile made partial payments to the Professionals, without objection by any Professional. Once it could no longer meet its obligations, including making payments to the Professionals, the liquidating Trustee,

BGD and Miura Steel Group, Inc., filed an Involuntary Chapter 7 Petition against Pennyrile. The Professionals, now seek payment of their unpaid fees directly from UCB because the Reorganized Debtor failed to do so.

Initially, the Professionals relied on *In re U.S. Flow Corp.*, 332 B.R. 792 (Bankr. W.D. Mich. 2005) and *In re Molycorp, Inc.*, 562 B.R. 67 (Bankr. D. Del. 2017), in support of their argument that UCB should pay their claims. Subsequent to the briefing by all parties on the issues presented, the Sixth Circuit issued an Opinion involving carve-outs and payment of professionals' fees in *Licking River Mining, LLC v. Nixon Peabody LLP (In re Licking River Mining, LLC)*, 911 F.3d 806 (6th Cir. 2018), which the Professionals contend supports their claim for payment from UCB. The Court gave the parties additional time to file supplemental briefs in light of the *In re Licking River Mining, LLP* case.

In *Licking River*, the attorneys and other professionals hired to assist in a Chapter 11 reorganization negotiated a cash collateral agreement, which included a carve-out whereby the secured creditors would "carve-out" sums from cash collateral to pay the professionals. Approximately five months after the cash collateral order was negotiated it became clear the debtor could not reorganize. The lenders promptly moved to terminate the debtor's use of cash collateral. The bankruptcy court ordered that sums be budgeted to pay the professionals so an asset sale could be completed rather than an immediate conversion to Chapter 7. Importantly, the lenders affirmed their support of the debtor's pursuit of an asset sale and agreed that cash collateral budgets would ensure that the professionals working on the asset sale during this period be paid. Shortly thereafter, the case converted to a Chapter 7 case and the professionals requested payment of all unpaid fees pursuant to the carve-out.

The bankruptcy court overruled the lenders' objections to the fee applications based on the clear text of the cash collateral order, as well as the lenders' conduct. The Sixth Circuit framed the issue as a contract dispute to which normal contract-interpretation rules applied. *Licking River*, 911 F.3d at 810. Unlike the case at bar, the facts of *Licking River* and the terms of the carve-out and cash collateral order in that case anticipated the debtor's insolvency and spelled out the terms by which the lender was responsible for the professionals' fees.

The Sixth Circuit emphasized the wording of the carve-out which repeatedly stated that it provided for the payment of the professionals' fees when allowed "at any time." *Id.* at 811. No such expansion of the terms of the Carve-Out is set forth in either the Cash Collateral Orders or the Confirmation Order at issue in this case.

The cash collateral order in *Licking River* specifically provided that its terms continued in the Chapter 11 as well as "in any superseding chapter 7 cases under the Bankruptcy Code . . .." *Id.* at 813. This provision along with at least two other instances in which the lenders represented to the Bankruptcy Court that they intended for the pre-petition liens to fund the carve-out in the event of insolvency, supported the finding that the terms continued to apply in the Chapter 11 case, as well as after the conversion to a Chapter 7 case. This Court does not read the *Licking River* case to stand for the blanket proposition that all carve-out provisions in Chapter 11 cases apply in the event of insolvency. It is only where the language of the document plainly sets forth such terms.

This case lacks the precise terms used in the cash collateral orders in the *Licking River* case. Most importantly, the parties in this case successfully negotiated the Second Amended Joint Plan of Reorganization which was approved by this Court. It did not subject UCB's liens, mortgages and guaranties to any claims for payment of the Professionals' fees. Nor was there any language in the

Confirmation Order shifting the responsibility of payment of the Professionals' fees from the Reorganized Debtor to UCB.

The *res judicata* effect of a confirmation order is well settled. *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir. 1992) (an order confirming a plan of reorganization constitutes a final judgment); *Chattanooga Wholesale Antiques, Inc. v. Rossville Bank*, *(In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 463 (6th Cir. 1991) (confirmation of a plan of reorganization has the effect of a judgment and *res judicata* principles bar litigation of any issues raised or that could have been raised in the confirmation process). Paragraph 3.05 of the Second Amended Plan indicates that the Professionals' fees are to first come from any amounts held in escrow and second, if there were no funds in escrow, the fees are to be paid "as soon as practicable . . .." But again, there is no written term that obligates UCB is to make these payments.

The Professionals further cite to the language in *Licking River* which states, "even if a case is converted to Chapter 7, the Carve-Out funds pursuant to court order are earmarked for the exclusive benefit of the court appointed Chapter 11 professionals." *Id.* at 4, quoting *In re U.S. Flow Corp.*, 332 B.R. at 798. The Professionals herein contend that the Carve-Out funds retain the same priority even after the case is converted to a Chapter 7. Again, the *Licking River* case relied heavily on the specific language of the carve-out in the cash collateral order which provided for the payment of professionals at "any time" and that the terms of the cash collateral order survived the conversion of the case from Chapter 11 to a Chapter 7. This case does not contain similar language, nor was this case converted to a Chapter 7 proceeding.

This case resulted in a successful confirmed plan of reorganization, the terms of which do not address a subsequent Chapter 7 liquidation. The Confirmation Order is not nearly as specific regarding the Carve-Out and payment of Professionals as in the *Licking River* case. In this case, the estate is responsible for paying allowed administrative expenses. To require a secured creditor or any other party to pay the allowed administrative expenses, a very specific agreement setting forth those terms must be included in the documents and be approved by the court. The documents before the Court in this case are not as broad and far reaching regarding the responsibility for the payment of professional fees as in *Licking River*.

The *U.S. Flow* case is not applicable to the case at bar either. While the case has some similarities to this case in that the professionals were paid pursuant to the terms of a negotiated carve-out, to which the secured creditor consented, the Chapter 11 case in *U.S. Flow* was short lived and converted to a Chapter 7 case less than a month after it was filed. The U.S. Trustee then sought disgorgement of the fees paid to the professionals and to have the funds provided for in the carve-out declared estate property. Here, no party is seeking disgorgement and a Plan of Reorganization was confirmed. The terms of the confirmed Plan make clear that the responsibility for paying the Professionals remained on the Reorganized Debtor. The *U.S. Flow* case simply does not apply to the facts before the Court.

The Professionals also rely on *In re Molycorp, Inc.*, 562 B.R. 67 (Bankr. D. Del. 2017). In *Molycorp*, the debtor corporations filed a Chapter 11 proceeding. Shortly after the filing, the debtors entered into a DIP financing facility with Oaktree Capital Management. The court entered an order approving the DIP financing and approved the hiring of a law firm to represent the official unsecured creditors' committee. Following extensive investigation of, and settlement of, claims that

could be asserted by the debtor's estates, a consensual plan of reorganization was formulated and approved by the court.

Oaktree objected to the committee's second interim fee application contending it violated the dollar cap on fees under the terms of the DIP order. The committee contended that while Oaktree's argument would have merit if the case was administratively insolvent, it had no merit where, as in the case at bar, a confirmed plan exists. There the court stated:

> As a general rule, administrative expenses must be satisfied from assets of the estate not subject to liens. A secured creditor's interest in its collateral is a substantive property right created by non-bankruptcy law, which may not be substantially impaired when bankruptcy intervenes. A secured creditor should not be deprived of the benefit of its bargain and will be protected in bankruptcy to the extent of the value of its collateral; furthermore, only surplus proceeds are available for distribution to other creditors of the estate and administrative claimants. Therefore, absent equity in the collateral, administrative claimants cannot look to encumbered property to provide a source of payment for their claims.

*Molycorp*, 562 B.R. at 75.

The court in *Molycorp* went on to hold that the DIP financing order capped Oaktree's exposure and liability to payment of certain administrative expenses in case no reorganization plan was executed. However, the debtors were successful in working out a confirmable plan. Ultimately, the court had to follow basic rules of contract interpretation to resolve the dispute. The court determined that the cap on the amount of professional fees in the DIP financing order only came into play if attempts to confirm a reorganization plan failed and did not come into play where the plan was confirmed. *Molycorp* does not support the Professionals' position in this case.

Here, a review of the language used in the Carve-Out and the Confirmation Order, support UCB's position. That is, nothing in the Cash Collateral Agreement or the Confirmation Order required payment of the Professionals' fees directly from UCB. Section 9(a) of the Second Cash

Collateral Agreement provided for contemporaneous payment of the Carve-Out funds to the Professionals. But more importantly, section 9(a) clearly placed the responsibility for the payments squarely on the Debtor.

Next, the Debtors could have withdrawn the Carve-Out on a monthly basis and placed it in escrow for the Professionals' benefit under the terms of the Cash Collateral Orders. The Amended Plan specifically addressed payment of the Professionals' fees at Section 3.05 of the Amended Plan. Nothing in this provision shifted the liability for payment of the Professionals' fees to UCB.

Unfortunately, the Debtors did not pay the Professionals's fees in full, nor were any of the Carve-Out funds placed in escrow prior to the Order of Confirmation. The Plan entitled Professionals to be "paid in full" first, from any Carve-Out amounts held in escrow, . . . and second, if carve-out amounts were exhausted, the fees were to be paid "as soon as practicable." The Court has not found, nor has any party directed it to a provision in the Confirmation Order requiring payment directly from UCB. More importantly, paragraph 4.02 of the Second Amended Joint Plan of Reorganization, confirmed by the Court, addressed UCB's treatment of its secured claim. It provides that "UCB's existing liens, mortgages and guaranties shall be deemed in full force and effect to secure the Reorganized Debtors' obligations to UCB." Nothing in this provision is subject to any continued claims of the Professionals or to the pre-confirmation Carve-Out.

The *Molycorp* case discusses the effect of a confirmed reorganization plan on administrative expense payments. *See Molycorp*, 562 B.R. at 77-79. The Court specifically discussed 11 U.S.C. § 1129(a)(9)(A) which requires that, unless otherwise agreed upon, each holder of an administrative claim will receive cash equal to the allowed amount of such claim. The Court stated that, while

administrative claims must be paid, in practice, administrative claimants are free to create side deals or modify their claims and they often do in order to ensure success of the Plan. *Id.*

UCB suggests that this must be the case here because the "cash collateral" sought by the Professionals is insufficient to satisfy their claims. *See* Affidavit of Michael Bush, Dk. No. 416 regarding the accounts receivables UCB has collected. Less the amount expended by UCB to collect the accounts receivables, UCB only recovered $74,848.47 from the liquidation of the cash collateral.[1] The time for the Professionals to object to their treatment was at the time the Plan came before the Court for confirmation. No objections were raised and those claims are now barred by *res judicata*.

Using basic rules of contract construction, the Court sees nothing in the Second Amended Plan or the Carve-Out that requires payment of the Professionals' fees directly from UCB's collateral post-confirmation. Accordingly, the Court must **DENY** the Professionals' Motion.

## **CONCLUSION**

For all of the above reasons, the Joint Motion to Compel Turnover and Payment of Carve-Out held by United Cumberland Bank filed by Dinsmore & Shohl LLP, Bingham Greenebaum Doll LLP, Fox Rothschild LLP and Phoenix Management Services, LLC, be and hereby is, **DENIED**. An Order incorporating the findings herein accompanies this Memorandum-Opinion.

---

[1]To the extent the Professionals claim UCB has collected monies from pre-confirmation assets as opposed to post-confirmation assets, and to the extent other secured creditors not subject to the Carve-Out and Cash Collateral Orders claim superior rights to the proceeds from liquidated equipment, an adversary proceeding is the appropriate method to resolve these claims.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CHIEFTAIN STEEL, LLC and ) | CASE NO. 16-10407(1)(11) |
| FLOYD INDUSTRIES, LLC ) | |
| ) | |
| Debtor(s) ) | |

### **ORDER**

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Joint Motion of Dinsmore & Shohl LLP, Bingham Greenebaum Doll LLP, Fox Rothschild LLP, and Phoenix Management Services, LLC, to Compel Turnover and Payment of Carve-Out held by United Cumberland Bank, be and hereby is, **DENIED**.